IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>*Plaintiff,*<br><br>v.<br><br>ONCOR ELECTRIC DELIVERY COMPANY, LLC,<br><br>*Defendant.*<br><br>AND<br><br>DELORES McCRANEY,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>ONCOR ELECTRIC DELIVERY COMPANY, LLC.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:18-CV-1786-C |

**DEFENDANT'S RESPONSE TO PLAINTIFF EEOC'S MOTION TO COMPEL ANSWER TO INTERROGATORY**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Oncor Electric Delivery Company, LLC ("Oncor" or "Defendant") and files its Response to Plaintiff Equal Employment Opportunity Commission's ("EEOC" or "Plaintiff") Motion to Compel Answer to Interrogatory ("Motion") [Dkt. 36] and respectfully requests that the Court deny for the reasons set forth herein:

## I.
## Relevant Background

1. The EEOC incorrectly contends that Oncor's drug policy improperly requires its employees to disclose information concerning the medications such employees are using which might impact their ability to perform the functions of their jobs. The EEOC maintains that Oncor is prohibited from making such medical inquiries, unless and until, the employee manifests a behavior or a symptom that puts the employer on notice that such a personal, medical inquiry is justifiable as a business necessity. *Equal Employment Opportunity Comm'n v. Oncor Elec. Delivery Co.*, No. 3:17-MC-69-K-BN, 2017 WL 5500933, at *3 (N.D. Tex. Nov. 16, 2017). However, the Fifth Circuit has held that employers can inquire about such issues to the extent there is a reasonable concern about the employee's ability to perform job functions or posing a direct threat because of a medical condition. *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. Appx. 1, 4 (5th Cir. 2018). The EEOC seeks relief on behalf of any Oncor employee who has allegedly suffered an adverse action due to the disclosure of medication pursuant to Oncor's drug policy. *See generally* Dkt. 34.

2. The EEOC's Motion concerns its request that Oncor be ordered to fully answer Interrogatory No. 1 contained in its Second Set of Interrogatories ("Interrogatory No. 1") and provide a litany of unnecessary, additional information concerning approximately 85 employees who disclosed medications to Oncor, as previously identified by Oncor in response to the EEOC's prior discovery requests.[1] *See* Motion, p. 3. The EEOC states that it requires such an answer "to determine the identification of employees harmed by [Oncor's] mandatory

---

[1] Specifically, the EEOC requests the: (1) name of each employee; (2) current job title of each employee if still employed by Oncor; (3) all departments in which each employee worked from November 7, 2014 to the present; (4) the dates from November 7, 2014 to the present in which each employee worked in each applicable department; (5) the identity of each employee's immediate supervisor(s) on all dates from November 7, 2014 to the present; (6) the dates during which such supervisor(s) supervised each employee; (7) each employee's last known address and telephone number; (8) each employee's date of birth; (9) if no longer employed by Oncor, the date of each

medication disclosure policy and practices." *Id.*, p. 1. The EEOC maintains that Oncor's employees could be harmed by its policy by risking suspension from work or termination of employment. *Id.*, p. 2.

3. As the EEOC addresses in its Motion, prior to the initiation of this lawsuit, it subpoenaed information from Oncor concerning the drug policy at issue and employees who may have been adversely affected by the same. *See* Motion, pp. 7-8, Ex. 4 thereto. Based on that information, the EEOC identified three (3) individuals whom it contends suffered adverse action as a result of the policy. *See* EEOC's Answers to Oncor's First Set of Interrogatories, Interrogatory No. 10, a true and correct copy is attached hereto as Exhibit A.

4. After the initiation of this suit, the EEOC served requests for the production of documents on Oncor. In response to the document requests, Oncor produced, among other things, 514 pages of documents concerning medication reviews of its employees which provides much of the information requested by the EEOC in Interrogatory No. 1 (e.g. names, supervisor names, job titles and duties, and Oncor departments).[2]

5. Thereafter, the EEOC served its Second Set of Interrogatories on Oncor. *See* Exhibit B. As discussed above, Interrogatory No. 1 seeks a variety of information concerning approximately 85 individuals whose names the EEOC apparently gathered from the medication reviews produced. The EEOC omits from its Motion, however, that it also propounded two other interrogatories in its Second Set of Interrogatories ("Interrogatory Nos. 2 and 3"). *Id.* Interrogatory Nos. 2 and 3 request, among other things, for each of the 85 individuals identified by the EEOC, whether the employees have been transferred, suspended or terminated from their positions as a result of their disclosure of medication to Oncor. *Id.* Oncor fully answered

employee's separation from employment; and (10) if no longer employed by Oncor, the reason for the employee's separation from employment, as to all individuals listed in its Exhibit A to its Interrogatory No 1.

[2] These documents were marked CONFIDENTIAL pursuant to the Court's protective order [Dkt. ____] given that they contain sensitive information concerning individual's health conditions and/or medications.

Interrogatory Nos. 2 and 3, disclosing that none of the identified individuals have been transferred, suspended or terminated from their positions as a result of their disclosure of medication to Oncor. *Id*. As discussed below, Oncor objected on a variety of grounds to Interrogatory No. 1. *Id*.

6. Oncor has attempted to work with the EEOC to provide the relevant information requested, proportionate to the needs of this case, concerning Interrogatory No. 1 and other matters. *See* Exhibit C. Indeed, Oncor explained to the EEOC that its objections to Interrogatory No. 1 had merit, but agreed to supplement other responses. *Id*. Importantly, Oncor explained to the EEOC that Interrogatory No. 1 exceeds the bounds of permissible discovery for a variety of reasons, particularly given the answers to Interrogatory Nos. 2 and 3. *Id*. Even so, the Motion inaccurately suggests that Oncor is improperly withholding relevant information regarding whether the employees have been transferred, suspended or terminated as a result of use of medication that was disclosed to Oncor.

7. The relevant inquiry to the EEOC's theory in this matter is whether Oncor employees have suffered adverse action as a result of the medication disclosure policy (which the EEOC incorrectly contends is illegal). The EEOC's Motion ignores the fact that Oncor fully answered its Interrogatory Nos. 2 and 3 concerning the same 85 employees, swearing under oath that none of the approximately 85 employees were suspended, transferred or terminated due to his or her use of a medication that was disclosed to Oncor. *See* Exhibit B, pp. 5-6. Oncor's sworn answer to Interrogatory Nos. 2 and 3 renders Interrogatory No. 1 moot. Stated differently, if none of the approximately 85 employees suffered adverse action due to his or her disclosure of medication to Oncor, the additional ten (10) categories of information sought by the EEOC in Interrogatory No. 1 are irrelevant and unlikely to lead to the discovery of admissible evidence. Moreover, Interrogatory No. 1 is extremely broad in its scope from a timing and breadth

perspective, greatly exceeds the number of interrogatories permitted under Rule 33 of the Federal Rules of Civil Procedure (the "Rules"), and appears to be nothing more than an impermissible fishing expedition by the EEOC. Moreover, Oncor produced hundreds of pages of documents which already contain much of the information sought by Interrogatory No. 1.

8. As discussed below, Oncor's objections to Interrogatory No. 1 are proper and should be sustained. Oncor has produced, and is not withholding, any non-privileged, relevant information. The EEOC has the names and other identifying information relevant to the employees at issue. If it truly desires to "test the veracity" of Oncor's position that none of the approximately 85 employees suffered adverse action, it may do so at its own expense, but Oncor should not be required to go beyond the bounds of what the Rules require concerning its discovery obligations and bear the additional time and expense of responding to Interrogatory No. 1.

9. As further discussed below, the EEOC's Motion is unnecessary and has needlessly increased the cost of this litigation. Because Oncor has fully complied with its discovery obligations, the Motion should be denied.

## II.
## Arguments and Authorities

3. Oncor does not dispute that information concerning whether its employees have suffered adverse action as a result his or her use of a medication that was disclosed to the company is discoverable in this case. Accordingly, Oncor has produced, pursuant to the Court's protective order, confidential documents it has been able to locate following a diligent search concerning employees who have disclosed medications to the company. However, as Oncor answered in response to the EEOC's Interrogatory Nos. 2 and 3, none of the employees identified in those documents were transferred, suspended, or terminated as a result of use of medication that was disclosed to Oncor. Oncor has not and is not withholding any information

concerning the same. Oncor will continue to honor its obligations to further supplement its discovery in the event additional responsive information or documents are located. Therefore, as set forth below, Oncor's objections to Interrogatory No. 1 should be sustained.

**A. Interrogatory No. 1 is irrelevant, overbroad and disproportionate to the needs of this case given Oncor's other discovery responses.**

4. The EEOC is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests and Rule 26(g)'s affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of the applicable Rules. *See generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014). The EEOC's attempt to require Oncor to provide a litany of information concerning approximately 85 employees across ten (10) separate categories of information over the course of nearly five (5) years simply exceeds the scope of reasonableness in this matter and creates an undue burden on Oncor where there is no appropriate need or justification for the EEOC's request, given the fact that Oncor has already answered, via sworn interrogatory response, that none of the individuals identified in Interrogatory No. 1 have been subject to adverse action in the form of transfer, suspension or termination due to their disclosure of medication to Oncor.

5. Clearly, "[t]he discovery sought is not so crucial that it justifies the burden that obtaining said discovery would place on the parties and this proceeding." *Equal Employment Opportunity Commission v. Allsup's Convenience Stores*, 2011 WL 1322021, at *3 (N.D. Tex. Aug. 23, 2011). Moreover, given Oncor's sworn answers to Interrogatory Nos. 2 and 3, there is no legitimate basis for the EEOC to inquire further into the information requested of the approximately 85 individuals, as Oncor has confirmed that none of the individuals were suspended, transferred or terminated due to their disclosure of medication to Oncor. Further, there is no legitimate reason for the EEOC to seek information in such an overbroad manner (all jobs, all departments, all supervisors, etc.) for a nearly five (5) year period. As a result, Oncor

respectfully requests that the Court sustain its objections concerning Interrogatory No. 1 as to relevance, overbreadth and undue burden.

**B. Interrogatory No. 1 vastly exceeds Rule 33's limit on interrogatories.**

6. Rule 33(a)(1) provides that unless otherwise stipulated or ordered by the court, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." There has been no such stipulation or order in this case. "Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co*., 315 F.R.D. 191, 194 (E.D. Tex. 2016) (internal citation omitted). To determine whether a subpart should be counted as a separate interrogatory, the test is whether the question could be asked separately from the primary question—that is, whether it is logically or factually subsumed within and necessarily related to the primary question. *Id.* at 196. Another way that approach has been articulated is to say that "where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within it." *Id.*

7. Interrogatory No. 1 requests ten (10) differing and independent questions and/or categories of information as to approximately 85 individuals. However, the differing categories of information requested by Interrogatory No. 1 are not logically or factually each subsumed within one another. For instance, the identity of each employees' supervisor over the course of a five (5) year period is not logically or factually related to whether such employees have been separated from employment. Similarly, the departments in which 85 individuals worked over a five (5) year period is not logically or factually related to the employees' dates of birth or the reason, if any, for the employees' separation from the company.

8. At best, and in the light most favorable to the EEOC, Interrogatory No. 1 constitutes 85 separate interrogatories. However, when viewed through the test promulgated by the *Eli Lilly* court, Interrogatory No. 1 contains as many as 850 separate interrogatories concerning Oncor employees, over a nearly five (5) year period. Through either lens, the information requested by Interrogatory No. 1 vastly exceeds the limitations imposed by Rule 33. Therefore, particularly given the context of the relevance of the discovery request discussed *supra*, Interrogatory No. 1 far exceeds the discovery obligations which the Rules impose upon Oncor, and Oncor respectfully requests that the Court sustain Oncor's objection to Interrogatory No. 1 concerning its exceeding Rule 33's limits and deny the Motion.

**C. Interrogatory No. 1 is an unpermitted fishing expedition.**

9. This Court has previously stated that it "will not tolerate fishing expeditions or forays into irrelevant areas of discovery such as requests for information that may have no temporal relevance to the issues at hand." *Munn v. D.H. Blattney & Sons, Inc.*, 2007 WL 9711410, at *3 (N.D. Tex. Sept. 6, 2007). Indeed, the Court has previously held that "employers should not be unduly burdened by a frivolous fishing expedition conducted by [a] plaintiff at the employer's expenses." *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp.2d 663, 669 (N.D. Tex. May 31, 2007) (internal citations omitted).

10. Given Oncor's sworn answers to Interrogatory Nos. 2 and 3, there is no legitimate basis for the EEOC to inquire further into the information requested of the approximately 85 individuals, as Oncor has confirmed that none of the individuals were suspended, transferred or termination due to their disclosure of medication to Oncor.

11. Moreover, even if the Interrogatory No. 1 had some relevance to the issues to be decided in this matter, many of the categories of information sought by the interrogatory have absolutely nothing to do with whether the employees suffered any adverse effects due to the

disclosure of medication to Oncor. For instance, the EEOC's claims are brought under the Americans with Disabilities Act; it has made no claim of age discrimination. Yet, the EEOC requests every individuals' date of birth, which has no bearing at all on this matter. Similarly, every position(s) held by the employees, the names of every one of the employees' supervisors, and the identity of every departments in which they work(ed), have no bearing on whether the employees suffered any adverse action due the medication disclosure policy at issue.

12. Instead, if the Interrogatory sought relevant information or was not unduly burdensome given the answers to Interrogatory Nos. 2 and 3, which is denied, the relevant inquiry would be the employees' position, department and supervisor at the time of adverse action by Oncor, *if* said employees suffered some adverse action by Oncor as a result of their disclosure of medication to the company (again, there was no such action taken by Oncor). The EEOC should not be permitted to request lengthy and voluminous amounts of irrelevant information from Oncor in this matter.

13. Indeed, Oncor asked the EEOC to identify all such individuals who it contends were adversely affected as alleged in its Amended Complaint and all documents supporting this contention. *See* Exhibit A, Answer to Interrogatory No. 9. In response, the EEOC named only three (3) individuals: Joseph Bradburn, Nathan Ross and Scott Dodd. *Id*. Thus, the EEOC does not provide a rational basis as to why further identifying information for all individuals listed in Exhibit A to Interrogatory No. 1, and not just Joseph Bradburn, Nathan Ross and Scott Dodd, is relevant. Again, the discovery request appears to be nothing more than a fishing expedition.

14. As Interrogatory No. 1 is nothing more than an impermissible fishing expedition by the EEOC, Oncor respectfully requests that its objection be sustained.

**D. Oncor produced responsive documents in response to Interrogatory No. 1.**

15. Finally, the Motion should be denied because Oncor performed a diligent search and produced all documents located within its possession, custody, or control relating to the disclosure of medications by its employees through the medication reviews of its employees. In this regard, Oncor produced 514 pages of documents concerning medication reviews of its employees which provides much of the information requested by the EEOC (e.g. names, supervisor names, job titles and duties, and Oncor departments). The EEOC may utilize such information to identify potential class members. In this regard, Rule 33(d) provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> > (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.

Fed. R. Civ. P. 33(d). The EEOC is able to ascertain further identifying information concerning potential class members through the medication review documentation. Oncor has provided the EEOC with such identifying information as to each Oncor employee who disclosed medication for review by the company during the relevant time period. When viewed in conjunction with Oncor's answers to Interrogatory Nos. 2 and 3, no further information is relevant or necessary. As a result, subject to Oncor's objections, the interrogatory was properly answered by identifying the records produced via bates-number ONCOR 1194 - 1707. *See McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 WL 2997744, at *9-10. (N.D. Tex. May 25, 2016). Therefore, the Motion should be denied.

## III. Conclusion and Prayer

16. Based on the discovery responses and documents produced in this case, Interrogatory No. 1 is irrelevant, unduly burdensome, overly broad and constitutes nothing more

than a fishing expedition by the EEOC. Moreover, Interrogatory No. 1 far exceeds the number of permissible interrogatories permitted by Rule 33. Despite the EEOC's contention, Oncor's financial status has no bearing on its obligations to respond to Interrogatory No. 1, as it fails to comply in multiple respects with the applicable Rules. Should the EEOC wish to "test the veracity" of Oncor's sworn answer to Interrogatory Nos. 2 and 3, there are less intrusive methods by which it may do so, at its own expense. For these reasons, Oncor's objections to Interrogatory No. 1 should be sustained and the Motion should be denied.

Respectfully submitted,

By: *<u>/s/ Kevin Koronka</u>*
Kevin Koronka
State Bar No. 24047422
kevin.koronka@huschblackwell.com
Leslie Brockhoeft
State Bar 24093771
Leslie.Brockhoeft@huschblackwell.com

**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 *facsimile*

**COUNSEL FOR DEFENDANT ONCOR ELECTRIC DELIVERY COMPANY, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2019, a true copy of the foregoing was delivered to all counsel of record via the Court's electronic filing system.

Toby W. Costas
Equal Employment Opportunity Commission
Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, TX 75202

Marshay Howard
Howard & Associates
Uptown Tower
4144 N. Central Expressway, Suite 600
Dallas, TX 75204

/s/*Kevin Koronka*
Kevin Koronka